IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| FRAZIER PORTER | § | |
| VS. | § | CIVIL ACTION NO. 1:19-cv-295 |
| JORDAN LANDRIO, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Frazier Porter, a prisoner previously confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Jordan Landrio, Brendan Dunlap, Clara Owens, and Jessica Judy Awbrey.

The action was referred to the magistrate judge, pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants Dunlap, Owens, and Awbrey filed a Motion for Summary Judgment.[1] (Doc. #118.) Plaintiff has filed a Response (doc. #119), and Defendants have filed a Reply (doc. #122). The matter is now ripe for review.

Factual Background

In April of 2017, Plaintiff began to experience the loss of strength and coordination, which he believes was related to a neck surgery he had in 2014. On July 13, 2017, Plaintiff fell three times

---

[1] Defendant Landrio has not been properly served with process. The return of service indicates that service was attempted by certified mail, and that Defendant Landrio did not sign the certified mail receipt. *See* FED. R. CIV. P. 4(e) (allowing service pursuant to state law); TEX. R. CIV. P. 106(a)(2) (Texas permits service by certified mail); TEX. R. CIV. P. 107(c) (requiring the return of service to contain the addressee's signature when service is made by certified mail). Although Defendant Landrio has not been served and has not joined in the motion, the Motion for Summary Judgment inures to his benefit. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the summary judgment motion filed by appearing defendants).

and was unable to stand. Plaintiff was taken to the medical department, but he was discharged without being examined and was given an appointment to see a medical provider the next morning.

When Plaintiff arrived at the medical department the next day, he spoke with a nurse, Defendant Awbrey. Defendant Awbrey told Plaintiff that she had spoken with the physician assistant who told her that Plaintiff did not need to see a medical provider. Instead of leaving, Plaintiff alleges he waited outside the medical department in a wheelchair for most of the day. Around 4:00 p.m., Defendant Landrio told Plaintiff that he had been instructed to escort Plaintiff to administrative segregation because Plaintiff refused to walk. Defendant Landrio brought Plaintiff to administrative segregation in a wheelchair and then told Plaintiff to get up so that the wheelchair could be returned to the medical department. When Plaintiff attempted to stand, he fell and was unable to stand. Defendant Landrio called for assistance. Several correctional officers and members of the medical staff responded to the request for assistance. Defendant Owens, a nurse, allegedly told the correctional officers that Plaintiff was faking his injuries. Plaintiff alleges the correctional officers lifted Plaintiff by his limbs and "slammed" him onto a gurney, which allegedly caused Plaintiff's neck to snap.

Plaintiff was brought to the medical department, but Plaintiff claims he did not receive adequate medical assistance because Defendants Owens and Awbrey believed that he was faking his injuries. Plaintiff alleges that he continued to seek medical assistance over the next seventeen days, but his requests were denied. Defendant Dunlap saw Plaintiff once during this time, and he determined that Plaintiff was fine.

On July 31, 2017, Plaintiff was taken to the hospital in Galveston for a followup appointment for his knee. While he was at the hospital, Plaintiff told the doctors that he had neck pain. An x-ray was taken of Plaintiff's neck, and it revealed that his neck was broken.

<u>Defendants' Motion for Summary Judgment</u>

Defendants contend they are entitled to summary judgment because the competent summary judgment evidence does not show that Defendants knew of, and disregarded, Plaintiff's serious medical needs. Defendants also contend they are entitled to qualified immunity because Plaintiff has not demonstrated that their conduct was objectively unreasonable in light of clearly established law.

In support of their Motion, Defendants submitted the affidavit of Dr. Glenda Adams (Exhibit A) and portions of Plaintiff's medical records (Exhibits 1-19). The medical records show that Defendant Awbrey, a licensed vocational nurse (LVN), saw Plaintiff in the medical department of the Stiles Unit at 1:56 p.m. on July 14, 2017, and completed a "Nursing Protocol for Musculoskeletal Symptoms." (Doc. #118-2 at 157.) Dr. Adams states that an LVN cannot make a diagnosis or dictate treatment unless the patient requires an emergency transfer via 911 and a higher-level caregiver is not available. (Doc. #118-1 at 17.) Defendant Awbrey consulted with Defendant Owens, a registered nurse (RN), and Gideon Daniels, a physician assistant (PA). (Doc. #118-2 at 162.) Mr. Daniels determined that Plaintiff should be housed in a building closer to the medical department, Plaintiff was given acetaminophen to keep on his person, and he was referred to a provider for knee pain. (Doc. #118-2 at 163.) Plaintiff was found to be stable, and he was released to security at 2:19 p.m. (Doc. #118-2 at 163.)

That same day, Defendant Awbrey was called to 11-building at 4:30 p.m., and she found Plaintiff laying on the floor. (Doc. #118-2 at 173.) Plaintiff was transported to the medical department, where he reported pain to his left knee, back, and neck. (Doc. #118-2 at 173, 175.) Defendant Awbrey consulted with Defendant Owens and J. Ramos, a nurse practitioner (NP). Ms. Ramos prescribed a one-time injection of the steroid Kenalog, three days of Tylenol, and seven days of the muscle relaxer Robaxin for seven days. (Doc. #118-1 at 13, Doc. #118-2 at 173.)

On July 17, 2017, Plaintiff saw Brendan Dunlap, a physician assistant, for a telehealth appointment. (Doc. #118-2 at 188.) The medical records show that Plaintiff reported knee pain, bilateral extremity weakness, a neurology disorder, and a prior stroke. (Doc. #118-2 at 188). Defendant Dunlap noted that neurology had obtained an MRI of Plaintiff's brain several months earlier, which showed no evidence of a stroke, and neurology had concluded at that time that Plaintiff exaggerated his symptoms. (Doc. #118-2 at 188-89.) Defendant Dunlap concluded that Plaintiff should be referred to neurology. (Doc. #118-2 at 189.) The referral request states, "Patient reports bilateral lower [extremity] weakness, was in hospital a few months ago and was [diagnosed] with functional neurological disorder, has not follow up with neurology. Now he reports his legs go out and he can not walk very often. Says symptoms come and goes [sic]." (Doc. #118-2 at 191.) After Defendant Dunlap was notified that Plaintiff was already scheduled for a neurology appointment on August 3, 2017, he concluded that it was not necessary to proceed with a new referral. (Doc. #118-2 at 193.)

Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled

4

to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Naranjo v. Thompson*, 809 F.3d 793, 806 (5th Cir. 2015) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v.*

*Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

*Qualified Immunity*

Defendants Owens, Dunlap, and Awbrey assert that they are entitled to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should

not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff has alleged facts establishing a violation of the Eighth Amendment.

*Deliberate Indifference to Medical Needs*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, Plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). Plaintiff must also demonstrate that the defendants were deliberately indifferent

to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; Plaintiff must establish that the defendants were aware of an excessive risk to Plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

The competent summary judgment evidence shows that Defendant Awbrey evaluated Plaintiff's condition twice on July 14, 2017, and gathered information that she passed on to her supervisors. Defendant Owens consulted with Defendant Awbrey on both occasions, but neither Defendant ultimately determined Plaintiff's treatment plan. Those decisions were made by a physician assistant following Plaintiff's first visit to the medical department on July 14, and by a nurse practitioner on his second visit. Plaintiff contends that Defendant Owens told correctional officers that Plaintiff was faking his injuries, but he offers no evidence demonstrating that her statement affected his medical treatment. Plaintiff states that Defendant Dunlap concluded Plaintiff

was fine after seeing him on July 21, 2017, but the medical records show that Defendant Dunlap evaluated Plaintiff's condition and referred him to neurology. With respect to Defendant Landrio, his only involvement in Plaintiff's care was bringing him to the medical department in a wheelchair and returning him to his cell.

The competent summary judgment evidence does not support a conclusion that the defendants were aware or should have known that Plaintiff had a broken neck, and then deliberately disregarded a substantial risk of harm due to his serious medical condition. While the facts might be sufficient to state a claim of medical malpractice, negligent conduct does not rise to the level of a constitutional violation. *Williams v. Hampton*, 797 F.3d 276, 280-81 (5th Cir. 2015) (noting that deliberate indifference requires a state of mind "more blameworthy" than negligence). In this case, none of the defendants' conduct rises to the level of egregious, intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

Because Plaintiff has not shown that the defendants violated his clearly-established rights under the Eighth Amendment, Defendants Owens, Dunlap, and Awbrey are entitled to qualified immunity. Defendant Landrio is entitled to summary judgment because the competent summary judgment evidence does not present a material question of fact that the act of transporting Plaintiff in a wheelchair violated Plaintiff's Eighth Amendment rights. As a result, Defendants' Motion for Summary Judgment should be granted.

Recommendation

Defendants' Motion for Summary Judgment should be granted.

<u>Objections</u>

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SIGNED this the 29th day of June, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE