UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **FRAZIER PORTER** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **1:19-cv-295** |
| | § | |
| **WAYNE BREWER et al.** | § | |
| *Defendant.* | § | |

## NOTICE OF APPEAL

**COMES NOW Frazier Porter, Plaintiff,** files this his Memorandum In Support of Notice of Appeal in the above cause of action. This is case arises out of several failures to act, omissions and the deliberate indifference. Plaintiff sought emergency medical treatment from the Defendants of the named Defendants **Defendants David Montgomery, Brenda Dunlap, Clara Owens and Jessica Judy Awbrey, Emma Glenn, Gideon Daniel, Laura Midkiff, Stacey Ebner** but was refused. Thereafter, Plaintiff was assaulted by **Defendants Toby Powell and Jordan Landrio** and others, broke Plaintiff's neck**. Then Defendants Wayne Brewer** and  **V. Blunt** ignored Plaintiff's outcries for medical care.

### I.
### ARGUMENTS AND AUTHORITIES

A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir.2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. 248; *Instone Travel Tech*, 334 F.3d at 427.

In this case, Plaintiff would show that each of the Defendants is in fact culpable for his

/her acts and were summarily dismissed from this case without viewing their duty to act or the aggressive nature of their behavior in the light most favorable to the movant.

### a. The Violations of the Medical Staff

In 2014, Plaintiff had surgery performed on his neck at the University of Texas Medical Branch, John Sealy Hospital in Galveston, Texas. Because of this prior issue, Plaintiff put in a sick call for the Stiles Unit of TDCJ in April, May, June, and July of 2017, to have a follow-up due to problems he was having with his neck. Despite all these requests for help, Plaintiff was denied being seen by medical many times during this four-month period. Plaintiff relaxed his sick call requests because they were ignored and because he was assured, he would be retaliated against.

On July 13, 2017, Plaintiff lost strength and coordination and Plaintiff fell three times in his dorm. Plaintiff was unable to pick himself up without help from his dormmates. On the third time in which he fell, Plaintiff hit his head; and the Stiles Unit Medical Department was called to help because Plaintiff had injured his head, neck, and his back. As a result, the medical department came and took Plaintiff back to medical. After a quick ten minutes of waiting, Plaintiff was quickly discharged without being seen by a provider. Plaintiff was told to return on the next day at 8:00 a.m. to see a doctor.

On the next morning, Plaintiff was in extreme pain and discomfort. One of Plaintiff's cell mates borrowed a wheelchair from another inmate and took Plaintiff to his 8:00 a.m. doctor's appointment. At that time, Plaintiff saw Defendant Nurse, Jessica Judy who was antagonistic towards Plaintiff's medical needs. Plaintiff told Defendant Judy that he experienced pain, loss of strength, and a loss of coordination. Defendant Judy stated that she had spoken to Physician Assistant, Emma Glenn who told her that she (Glenn) saw no reason for Plaintiff to

see a provider. P.A., Glenn did not examine Plaintiff prior to making this decision.

Plaintiff was, therefore, sent back to his dorm without seeing a physician or being examined at all. However, Plaintiff refused to leave the infirmary, hoping instead to catch any provider to appeal to help. After several hours went by, Porter saw Warden, V. Blount, and David Montgomery leaving the infirmary around 11:00 a.m. Plaintiff told them his problems as they left and again when they returned from lunch, told them he was a previous neurological patient and that he was now experiencing more complications. They walked away, left Plaintiff sitting there outside of the clinic, and offered no assistance.

About an hour later, Plaintiff was able to get into the infirmary and was seen by Physician Assistant, Gideon Daniel. Plaintiff explained to Mr. Daniel the pain, loss of coordination, and loss of strength he was experiencing. Daniel did not perform any type of physical examination on Plaintiff but simply told Plaintiff that he did not see any reason for Plaintiff to see a provider.

### b.  The Violations of Jordan Landrio

Jordan Landrio came into the case at this point. He was sent to make Plaintiff leave the clinic but when that failed, Defendant Landrio was forced to arrest Plaintiff and to the administrative segregation building since Plaintiff refused to walk. Defendant Landrio took Plaintiff to his newly assigned cell and ordered Plaintiff into the cell, telling Plaintiff that he, Landrio had to return the wheelchair to the infirmary. When Plaintiff attempted to get out of the wheelchair, he fell again and hit his head against the wall.

Defendant Landrio continued trying to get Plaintiff into the cell, but it had become clear to him that he needed assistance. Defendant Landrio called for assistance and a number of officers and medical personnel came, including Defendant Judy, Defendant Clara Owens.

### c. The Violations of Toby Powell

Also arriving on scene was Defendant, Toby Powell. Defendant Powell was a Major in TDCJ who feigned sympathy towards Plaintiff caused the most physical harm. Defendant Owens told Defendant Powell that Plaintiff was only faking his injuries and symptoms and there was nothing wrong with Plaintiff. Angered by Plaintiff's inability to move, Defendant Powell ordered the eight guards around Plaintiff to pick him up and throw him into the bunk!

Many had moral objections, complained and refuse to be brutal. At the sound of the complaining, Defendant Powell then went and found more guards to act out his bidding. The four of them, Defendant Powell included, picked up Plaintiff much higher than the gurney and they violently slammed Plaintiff onto the plastic backboard that was on top of the gurney, causing Plaintiff to scream out in pain. They broke Plaintiff's neck. Plaintiff screamed out loud and one of the guards commented, "At least his lungs are good – you can hear him clear out to the parking lot."

As Porter was slammed onto the hard plastic on the gurney, he felt an abrupt "snapping" in his neck, and he told the officers this. Porter now told the officers that he was experiencing pain at a level of 10 on the 1-10 scale, with 10 being the worst. Plaintiff was again physically taken to the clinic by Defendants Owens and Judy as well as Defendant Powell.

And again, Plaintiff was denied the ability to see the doctor or treatment provider. Plaintiff was not given a physical examination. Instead, Defendant Judy reiterated that Plaintiff was merely

faking his injuries despite telling them that he felt a snap in his neck. Plaintiff pleaded with these nurses to help him, but they refused.

Plaintiff was returned to administrative segregation via a gurney and again, violently slung onto his bunk. Later that night, Plaintiff attempted to roll out of bed and go to the bathroom. He fell to the ground and was given no assistance, being forced to lay in pools of his own urine. Plaintiff was not assigned a handicap-accessible cell and was further denied a wheelchair. It was later discovered that Defendant Major Powell ordered that no one was allowed to go into the cell to assist Plaintiff.

Plaintiff was returned to administrative segregation via a gurney and again, forcefully slung into his bunk on his neck and back. Later that night, Plaintiff again attempted to roll out of bed and go to the bathroom. He fell to the ground and was given no assistance. Plaintiff was forced to lay in pools of his own urine. Plaintiff was not assigned a handicap-accessible cell and was further denied a wheelchair. It was again discovered and communicated to Plaintiff that Defendant Major Powell ordered that no one was allowed to go into Plaintiff's cell to assist Plaintiff in any way. Plaintiff's cries for aid and for pain relief fell on deaf ears.

Eventually, Plaintiff was taken back to a PHD cell and left there. Even after Plaintiff had broken his neck, the medical personnel ignored the cries of Plaintiff. They came to check on Plaintiff once, several days after Plaintiff broke his neck and again found nothing wrong with Plaintiff. Plaintiff would show that this is the basis of his lawsuit against these Defendants.

From July 14, 2017, through July 30, 2017, Plaintiff remained on the floor in PHD lying in a pool of urine and feces. No emergency care was made available to Plaintiff. On July 31, 2017, Plaintiff was finally taken to John Sealy for a follow-up visit concerning his knee implant, a pre-existing injury. At this medical visit, the doctors became concerned about his neck injury

which he received nearly 15 days prior from Defendant Major Powell. It was only then that doctors showed concern for Plaintiff's broken neck, which he had sustained weeks earlier.

### d.      The Violations of Wayne Brewer

Defendant Wayne Brewer was in charge of the prison and was approached by Plaintiff requesting to see medical but, Defendant Brewer never listened to Porter Frazier.

### e.      This Case Should be Remanded to the District Court

The District Court ruled that the Defendants and the case should be dismissed because Plaintiff could not show that he filed grievances against Toby Powell. Plaintiff argued that the usual case involves TDCJ violating Plaintiff's rights to file his grievances. TDCJ refused to submit them; refused to acknowledge them; and refused to timely answer and always finds no fault by their staff.

These Defendants broke Plaintiff's neck, refused to see him in the infirmary and then left Plaintiff for two weeks in pain on the floor of his cell. It was only the fact that Plaintiff had an appointment to see the doctors at John Sealy Hospital – Galveston for another issue that probably saved his life.

### f.

The summary dismissal of the Defendants in this case where there is ample evidence of their excessive indifference and deliberate indifference is a common theme under review in the 5th Circuit.These facts smack familiar to the recent holdings of the 5th Circuit Court of Appeals. See, **Fairchild v. Coryell County Texas, et al.**, No. 20-50237, (5th Cir. 2022); ***Timpa v. Dillard***, 20 F.4th 1020, 1028–29 (5th Cir.2021) (explaining that qualified immunity may provide a defense at the early stages of an encounter but not later stages when the continued use of force violates clearly established law); ***Aguirre v. City of San Antonio***, 995 F.3d 395, 424 (5th

Cir. 2021) (Jolly, J., concurring in the judgment) (concluding that the officers' use of force was initially justified but became a violation of clearly established law when officers continued to "apply the maximal restraint position for another two minutes" after the decedent had appeared to stop resisting). "Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." *Timpa*, 20 F.4th at 1034.

In cataloguing our jurisprudence on this point last year, *Timpa* identified features of the cases that had "reaffirmed" this principle "again and again." Id. at 1035–36 (discussing, *Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018); *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016); *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008)). Most will sound familiar: the seized individual was "suspected of only a minor offense," "initially resisted," "was obese and forced to lie prone on [the] stomach with [] hands restrained, and bodyweight force applied to [the] back," and "[m]ost importantly . . . was subdued, unable to flee, and non-threatening during the continued use of force." *Id*. at 1036 (citations omitted).

In this case, Plaintiff went to the clinic on several occasions and was declared to be misusing the system. Plaintiff was continually denied the ability to see the doctor until he was sent to Galveston to see the doctor for another ailment.

Plaintiff went to complain to the Unit Major, Defendant Powell and wound up having his neck broken. After breaking Plaintiff's neck, Defendant Powel ordered that Plaintiff be left in his cell and no one could go in the cell to assist Plaintiff. Plaintiff attempted to file a grievance on this issue, but Defendant Powell would not allow it to move forward.

This case has fact issues that need to be resolved by a trier of fact. Plaintiff therefore prays that this case be heard on appeal and then remanded to the trial court for a trial on the facts against these Defendants.

Respectfully submitted,

THE T. J. SOLOMON LAW GROUP, P.C.

*Tanika J. Solomon*

TANIKA J.  SOLOMON
State Bar No. 24057713
2120 Welch Street
Houston, Texas 77019
Tel: (713) 640-5956
Fax: (713) 640-5944
Email: attorney@tjsololaw.com
ATTORNEY FOR PLAINTIFF,
FRAZIER PORTER

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 22, 2022, a true and correct copy of Plaintiff's Notice of Appeal was served on the following counsel of record in accordance with the Federal Rules of Civil Procedure:

**Attorney(s) for Defendants**
**Joseph Miles Abell, IV**
Assistant Attorney General
Law Enforcement Defense Division
Office of the Attorney General
MC 012
P.O. Box 12548
Austin, Texas 78711-2548

**Attorney(s) for Defendants**
**Erika Danielle Hime**
Assistant Attorney General
Law Enforcement Defense Division
Office of the Attorney General
300 West 15th Street
Austin, Texas 78701-1220

*Tanika J. Solomon*
TANIKA J. SOLOMON